Our next case is the Chamberlain Group versus Tectonic Industries et al., 2018-21-03 and 22-28. Mr. White. Good morning, Your Honors, and may it please the Court. We identified a number of errors from the proceedings below, but I intend to focus on three issues related to the 275 patent this morning. Ineligibility under Section 101, invalidity based on Menard, and non-infringement. The claims of the 275 patent are ineligible because they recite an abstract idea of collecting and transmitting information about a movable barrier, and under Step 1 of ALICE, this fails to satisfy the test of doing something else. Patentee says it's a claim to a machine. Understood, but the claim to a machine does not save it from being an abstract idea. Just because it recites some components, this Court has repeatedly had that that's not enough to take it out of the context of an abstract idea. And here, if you look at the claims, it really does just require collecting information and then transmitting it, and that has been found repeatedly by this Court to be an abstract idea. Turning to Step 2 of the ALICE analysis, the claims do not recite anything that transforms that abstract idea into something that is patent eligible. There is no inventive concept here. The only argument that Chamberlain has raised about an inventive concept is, quote, a new type of movable barrier operator that includes an integrated controller and a wireless transmitter to transmit a signal, and that's from page 28 of my brief. The specification and both sides experts agree that the claims require nothing more than off-the-shelf conventional components used in a conventional manner. That's present in the specification, the descriptions of the controller and the transmitter being routine and conventional and well-known. And Dr. Ryan, Chamberlain's expert, conceded that, and our expert, Dr. Foley, testified likewise. Well, are there factual issues as it relates to Step 2 that were not fully resolved? The District Court did not reach Step 2 in its JMAL analysis, but we don't believe that there's any disputed factual issues here that would require remand, for example. We believe on the record the consistency between the specification and the expert testimony that there are no factual issues. So we're not going to resolve this issue and decide it for us here. I guess the other side is saying that there's some kind of improvement or technical improvement to this claimed movable barrier operator because it's doing the communication wirelessly. Maybe that's the hook, that's the twist. Yeah, we obviously disagree with that, Your Honor. The claim is basic and simple. It requires a controller that's coupled to a transmitter, a wireless transmitter, and the controller has to be coupled to a movable barrier interface, nothing more. So the fact that you're transmitting something wirelessly is not inventive, it's not transformative, it's not an inventive concept. What about the fact that this can both send and receive signals? Isn't that, just doesn't that distinguish itself from the prior art? It does not. Merely transmitting information using a conventional well-understood idea. And so the fact that BSG tells us if the claim's only inventive concept is the application of an abstract idea using conventional well-understood components, it hasn't been transformed into anything that's actually patentable. So I think BSG is definitive on that. And the only other argument that they raise is supposedly some new ordered combination, but they haven't specified what that combination is. And again, if you look at the claim language, it merely requires a controller that's operably coupled to a transmitter and a movable barrier interface, nothing more. There is no ordered combination that transforms this. But wouldn't we be better off here if in fact the court had talked about what those factual arguments and debates are as it relates to step two? Wouldn't you be better off here? I mean, for purposes of our review. I don't think it's in the specification on appendix page 217, column three. It describes the controller and the transmitter both. And so we don't think that there's any necessary underlying factual determinations that need to be made. And there were no factual determinations that were submitted to the jury? Correct, correct. I want to transition and talk about invalidity under Menard. Well, I want to have you talk about 966 patents. Sure. Why we're not pretty much obligated to accept the jury verdict? Sure. So with respect to the 966 patent, the issue that we've raised on appeal is whether there is anticipation when you've got a piece of prior art that discloses all of the elements that are required from the claims. In two different embodiments, in two different figures, right? Understood, yes. That's true. But this patent in particular, when out of its way to say that these are exemplary embodiments and modification is unexpected. And Mr. Menard, I'm sorry, Mr. Weick himself, the inventor, testified at trial and explained just that. But you're not objecting to the jury instructions, are you? We're not objecting to the jury instructions. So why isn't that a factual finding that the jury was entitled to make? Because if you look at the decision, the Microsoft case that we cite, the district court in its Jamal decision simply got it wrong, saying that just because... Well, the district court gets it wrong in its Jamal decision, but that wrong analysis was harmless because that issue was never presented to the jury that way. The issue was presented to the jury that you could come, that the references disclose all the limitations. But the language that you object to in the Jamal was never in a jury instruction, was it? The testimony from our expert about the Weick reference was absolutely submitted to the jury. But that's not my question. The language that you complain that the judge used when citing Microsoft in the Jamal was never in a jury instruction submitted to the jury, was it? I think that's correct. I don't know for sure. And you don't raise any issue with respect to the jury instructions? That's correct. We don't hear. So the question that we have to analyze is whether or not substantial evidence supports the jury's finding under the instructions as given, right? You do. Okay, so the fact that the district court might have misspoken in the Jamal doesn't answer the question, does it? Well, I think it does. I think because there is no substantial evidence to support the other side of this. If you look at what's in the disclosure, that's undisputed. It's undisputed what's in the disclosure. The simple question is whether legally those two things go together in anticipation. And we think the judge got it wrong, and that's why it should be here to anticipate only needs to disclose what's in the 275 patent claims. And it does that using almost identical language and terminology. The district court's denial of the Jamal on the 275 patent with respect to Menard rested on two issues. First, whether Menard disclosed the signal corresponding to an operational status condition defined by two status conditions being experienced by the controller. And the second dealt with the physical components about the movable barrier operator. I want to take those in reverse order and talk about the movable barrier operator requirement first, because Menard does in fact disclose the movable barrier operator that comprises a controller and a transmitter, just as required by the claims of the 275 patent. We don't have to look any further than figure 31, which is appendix page 12292, and the corresponding disclosure. It shows a movable barrier operator in the form of what it calls system 10,000 coupled to GDO 1,000. So why wasn't it reasonable for the jury to look at GDO 1,000 as being the corresponding claim limitation and seeing that, well, you know, there's that box 10,000 that's outside of GDO 1,000? Well, even Chamberlain concedes that they don't have to be in the same physical housing. And the specification undeniably says that the system 10,000 is coupled to, using the exact same language required by the claim, GDO 1,000. That is found on appendix page 12238. That shows that the processor, the controller is coupled to the transceiver. What would be a reasonable interpretation of that figure by the jury? And as I understand it, the jury could have looked at box GDO 1,000 and said, okay, that's the corresponding claim limitation. And outside of that is this system box 10,000. That's not part of the GDO. So therefore, all of those things inside of system 10,000 aren't part of Minode's GDO. So I think the simplest answer to that is the claims don't claim a garage door opener. They claim a movable barrier operator that comprises three things. A controller at the center coupled to a movable barrier interface, which is the gears and the motors and the rail, and a transmitter. And Menard discloses that. The processor 12,000 is the controller. It says it is coupled to the transceiver 1300, I'm sorry, 13,000, which is the transmitter. It also is coupled to the GDO 1,000, which is the movable barrier interface that has the motor, the gears, and the rail that actually move the door. So it is the same configuration. But apart- You're not actually objecting to the claim construction, correct? Correct. We are not. And to the extent that that went to the jury, you're not objecting to that? Correct. Right. So don't you have a really heavy lift on this, given that anticipation is a question of fact? I don't think so, because the only evidence that the jury heard was testimony from Chamberlain's expert. But the case law tells us if that language is contrary, the testimony is contrary to what's in the claim or it's contradictory, that it is not substantial evidence. And I think it's both here. If you look at the claim, it requires a controller coupled to, nothing more, optically coupled to, a transmitter and a movable barrier interface. So why didn't you put on any expert testimony to rebut that? Oh, we did. We absolutely did. Well, but the jury had the right to disregard that, right? I understand that. But if his testimony, being Chamberlain's expert, is contrary to what's in the claims, that is not substantial evidence. And I want to take it just to one step further. If there was some sort of requirement that these things had to be integrated or combined in a physical housing or something like that, there is an express disclosure of that in Menard. This is on Appendix Site 12238. It says, other embodiments of the system are also contemplated, one of which includes the garage door opener, as part of the system. So if there was any concern about whether these things had to be integrated, it is expressly disclosed as an alternative embodiment. I'd like to move and talk briefly about the second requirement, the operational status condition. Menard discloses that. The specification is very thin on the 275 patent about what it requires. But under Chamberlain's theory, if you transmit a signal that says simply the light is on, that signal is defined by the light being on, and it's also defined by the light not being off, a condition that's not present but possible. Menard discloses that. It discloses multiple conditions with multiple discrete operating states, and at a level that at least is as great as what's in the 275 patent. So Menard anticipates the claims. Are there any differences between Menard and your redesigned product? Between Menard and the redesigned, the GD2000A? Yeah, I mean, that's one of your arguments, is that if we practice essentially what Menard does. Well, I think there are, because we transmit one piece of information at a time. And Menard discloses transmitting multiple pieces of information at a time. So it is a distinction that makes it even less likely that we can infringe, and in fact shows that we can infringe. And I want to talk about that in my rebuttal time. But I do want to say, for non-infringement, the problem with the J-Mall ruling here is that it did not adhere to the district court's construction from claim construction, that the signal be defined by at least two states being experienced. Being experienced was the key. And you can see this by comparing the jury charge, which requires that same analysis, with the J-Mall ruling. The J-Mall ruling on appendix page 115 to 116 says that such a signal, this is what the judge relied upon to find infringement, for example, light on, so the signal is just light on, is defined by both the status condition it carries and the potential but not present condition it necessarily precludes. So the district court told us in claim construction, the signal has to be defined by two states being experienced by the controller. But that for infringement, because there was no evidence of that happening in the redesign, the district court let the infringement verdict stand based on a signal that was defined by a condition it carried and a potential but not present condition. That is absolutely something that's not being experienced and cannot comply with the district court's claim construction. With that, I'd like to stop and reserve what I've got left for rebuttal. We will do that, Mr. White. Thank you, Your Honor. May it please the Court. With the Court's permission, I'd like to start where counsel started, which is on the 101 issue. And as one of Your Honors began, the questioning is, isn't our claim to a specific physical device? And the answer is, yes, it is. And that contrasts our claim with every case from this circuit finding unpatentable subject matter. Our claim begins — Oh, didn't Alice have a physical device involved? I mean, there was both a method claim and there was a system claim. Why wasn't — I mean, that was obviously one of the things I said in dissenting Alice was, okay, it might be obvious or something else, but it's to a machine. And what's the distinction between that and this? The distinction is that every claim where it was to a system that had to be performed on a machine, what they said in Alice and what this Court has said repeatedly in all the other cases finding unpatentable subject matter is that the problem is it's a generic machine. It's a generic computer. Every case that this Court's found unpatentable points out what's missing is there is no improvement. There's no improvement to the computer or there's no improvement to the database. I'm citing, for example, Affinity Labs. Or in BSG, there was no improvement to the way databases store. Or if we look at TLI communications, there's no new physical combination of the two. Here's what we have. We have a movable barrier operator. So it's a physical device. How is it improved? It's improved over the prior art because until this claim, there were no movable barrier operators where integrated within the movable barrier operator were three things, a controller, a movable barrier interface, and a wireless status condition data transmitter. Okay. So let's take that into pieces. I mean, we know from your own specification that the claimed controller was a known conventional thing for movable barrier operators. We also know from your spec that the interface was just any known conventional interface that's used in movable barrier operators. So all of that is just conventional, old, basic, generic technology that's claimed in the claim. Then we have this wireless data transmitter, which is all about issuing notification messages as to the status of the movable barrier operator. And that's ultimately the advance over the prior art that's offered in this patent. The idea of sending out these notification messages. And so that's where I get worried for this claim is that feels like an abstract idea. I'm sending out notifications about the status of something. Here, it happens to be a movable barrier operator. But nevertheless, sending out status messages about a particular thing sounds like an abstract idea. And I don't see any kind of improvement here in any underlying technology as to how one transmits data or how one connects the data transmitter generically claimed to a movable barrier operator. And so the question is, why isn't this just directed to an abstract idea of communicating information? Because the improvement is that all of these, they may be traditional hardware, a wireless transmitter, a controller, and a movable barrier interface, and a wireless transmitter. Never before were they integrated into a movable barrier operator. Well, is that a step two issue or a step one issue? Well, as this court has recognized, it's sometimes a gray area when you go from step one to step two, when you should do that. In this case, the court found it was a step one issue. And the improvement is in the specification. It is detailed at length, actually. If we look at starting with column one, one of the problems is, until you integrated it, you would have to hook up things physically. And so you would have various modules, which, by the way, is Menard. That's why we are not Menard or anticipated by Menard, is the garage door opener was physically coupled to this Menard system 10,000. What our system does is by having everything integrated into the MBO, you avoid all of these physical hookups that you have to do. That's number one, and that's pointed out in the specification. The second thing that it does is it gives you the flexibility of not having to do this physical interface where you might want to hook up to a peripheral. You might want to transmit to a peripheral that doesn't even exist yet. And that was a huge benefit. This patent was filed in 2003. And today, those transmissions that are received from the movable barrier operator, letting you know if you forgot to close your garage door, for example, you get on your iPhone that didn't even exist until 2007. And so this invention enabled seeing into the future 5, 10 years and being able to transmit to peripherals that didn't even exist at the time. It was already pretty well known by 2003 that devices could communicate with each other wirelessly, right? Certainly. They could communicate by text. They could communicate through wires. They could communicate, I don't know, by fax, by telephone, by all kinds of known communication schemes. And now this particular one in this claim calls for it just to be done wirelessly. So that's my concern is what we're doing here is taking already well-known conventional technologies and using them for their already well-known established purposes. But in an unconventional way. Until this was done, movable barrier operators only received transmissions, open my garage door, close my garage door. Until they were all integrated in this movable barrier operator invention, they only did the one-way transmission. And the court actually... But that still doesn't change the fact that at step one, this invention is directed to improving the wireless transmission, right? Or improving the transmission of signals. No, I would respectfully disagree. And I think the court, the lower court found that it was actually the focus is exactly what the preamble says. It is improving a movable barrier operator. A physical device that didn't exist before this invention. Now, if we don't agree with you and find 275 patent to be abstract and invalid. But if we do agree with what you wrote in your briefs and are about to say, that we should uphold the other patent. Would we have to send the case back on damages? Because most of the damages seem to be attributable to 275 patent. I assume that you would, Your Honor. But I'm going to urge the court not to have to get there because... I knew you would. Even if Your Honor should find that the court was wrong on step one. Even if this is a Baskin situation, for example, and the court was wrong on step one. Then we go to step two. And then we ask ourselves, what is the inventive concept here? What is the improvement? What is the difference over the prior part? And the court, and Your Honor asked, are there factual findings? There were factual findings made by the court. Now, you can view them in the context of Alice step one, which is what the court did. But if you take them and move them into Alice step two, now you've got actual factual findings made by the court. And then the question is, were they clearly erroneous? Was this truly, was the court clearly erroneous in saying that this movable barrier operator had never been done before? And if that's the case, if this is not patentable, where you've got a physical device that had never been done before and had all these advantages over the prior art... It's a question of novelty. What we're talking about now is abstractness. Well, in Alice step two, though, you're also looking at, has there been an improvement? Is there something concrete here versus abstract that has been done in this invention? And what we're saying is, and what the court said, only he did it in the context of Alice step one, but if he'd done it in the context of Alice step two, what the court is saying is, yes, this is a new invention with improvement over the prior art. If we look at Appendix 101, for example... Other than generic, combination of generic components. There are no non-generic components in the movable barrier operator. The transmitter is generic, the controller is generic. What we have, though, and what many cases have found, for example, Baskin and the most recent one by this court, Fitbit, is it's the combination of taking generic known components and combining them in a non-generic way. And if you can't do that, I mean, KSR recognized that almost all inventions are starting with what's already known. That's how you build, the building blocks of what's already known, and you do something unconventional with them. So what we have here is an improved machine, which is not abstract. You can actually see it, feel it, touch it, and known conventional components put together in an unconventional way. And that's why, whether it be Alice Step 1, which is what the district court did, or Alice Step 2, what we have here, as the district court found it, is absolutely patentable. If it's not, I'm not sure what's going to happen with inventions down the road. Well, if it's patentable, then why doesn't Menard anticipate it? The reason Menard doesn't anticipate is that Menard is a modular device. So again, for the very reason that we're a new invention, which is everything is, it says a movable barrier operator comprising. So all of these components are in the movable barrier operator. Menard is just the exact opposite. Menard is a modular. So you've got garage door opener 1,000, that would be the movable barrier operator. And this whole system that Menard describes at 10,000 in figure 31, which we can find at appendix 12-292, that whole system is separate from, it's not only not integrated, it's completely separate from the movable barrier operator. You could take Menard and you could put it on your dishwasher or put it on your refrigerator, or you don't have to use it in conjunction with the movable barrier operator. And that's where we're different. And in fact, if you look at figure 31, there is an actual physical coupling of the garage door opener to the system 10,000. And of course, the jury was instructed that- Is there something in Menard that says you can just stuff both boxes into the same box, the system and the GDO? Actually, that's not what you're on. There is something, but the something is that Menard says that the GDO 1,000 can be incorporated into the system 10,000. So there wouldn't be some physical coupling between the two boxes. They'd be part of the same box, right? It would be part of the same box, but it would be the opposite of our invention. Our invention is that Menard's system 10,000 needs to be integrated into GDO 1,000. Menard is saying the opposite. Menard's saying, well, you could put the GDO 1,000 inside the dotted line. It's saying the exact opposite of what our invention is. How is that a physical difference? I guess I don't understand. System 10,000 needs to be in GDO 1,000, but Menard says GDO 1,000 is inside system 10,000. It's going to look the same, isn't it? Not necessarily, Your Honor. And it may not act the same either, because what we're talking about, Ben, is the system that within it, one of the components is a garage door opener. What our claim is claiming is a garage door opener, and the components within it are a transmitter and a receiver and a controller. Didn't you concede that there doesn't have to be a physical coupling of those features? I'm sorry, concede in relation to Menard? Yes. Or no, actually, we're saying that in order to meet the claim limitation, you have to all of the features, the transceiver. Yeah, but I thought you conceded there didn't have to be a physical coupling of those three features to satisfy your limitation. I don't believe we conceded that. We conceded they didn't have to be in the same housing, a physical housing. In fact, they couldn't because part of the movable barrier operator are the chains, for example, that are going to pull the movable barrier up and down. So, of course, they can't be in the same housing. That wouldn't make sense. So, we didn't concede that they didn't have to be coupled together. In fact, they do. They have to be integrated all within the movable barrier operator in order to reach the claim limitations. Integrated does not include physical coupling. It doesn't have to include it being in the same housing, Your Honor, is how I would answer it. I'm not sure we ever talked about it in the context of a physical coupling, but we've always talked about it having to be integrated because that's what the claim says. It's a movable barrier operator comprising. And in going back just to finish up on Menard, remember, the standard that we're looking at is that the burden obviously was on the appellant by clearing convincing evidence. The jury heard unequivocal testimony from our expert that Menard is different, that it doesn't, in fact, it doesn't have the benefits of our invention because of the modular nature of it. There would have to be some form of physical connection made, and you wouldn't have the In addition to that, of course, the jury was instructed that the burden was on the appellant, and the jury found for us, they rejected the appellant's challenge. I would point out that the standard is no reasonable juror could have found that appellant failed to meet their burden by clearing convincing evidence. They certainly would. And the one language that Your Honor pointed out when their expert was asked about that one phrase, he said he found it confusing. That is, I think, the exact opposite of clearing convincing evidence. I will touch on, I only have 35 seconds left. And I think you've confused the color of the light. You have minus 35 seconds. I am. I apologize, Your Honor. Then I guess I shall finish if the Court has no other questions. Thank you, counsel. Thank you. Mr. White has some rebuttal time. Thank you, Your Honor. With respect to Alice, step one, we heard arguments about improvements associated with integration of components. But if you look at the claims, that's not a requirement. The claim is straightforward. It requires a couple things be coupled, operably coupled. It does not require integration. It's not in the claims. It's not even described in the specification. For step two, we heard something about a supposed new ordered combination. But it's just simply not there in the claims. If you look at the claims, again, the controller has to be operably coupled to two other things, a transmitter and a movable barrier interface. That is not a new... Should we remand for a further analysis of step two? Again, I don't think you need to, based upon this record. This is different from BASCOM, where you actually had a physical location of components. Here, there are none of those requirements. It's just two things, three things coupled together, nothing more. In terms of MNAR, you heard arguments about it's supposedly a modular system, that one thing is outside of the other. And we heard Chamberlain argue that the GDO-1000 is the movable barrier operator. That's not accurate. The movable barrier operator is the combination of system 10,000 and 1,000 together. The GDO-1000 is simply the movable barrier interface. When you look at it from that context, with the movable barrier operator being the combination of 10,000 and 1,000, you can see all the components are there. And the language in the specification is identical to what's in the claims. It says the things are coupled to one another. The last thing I want to talk about is damages. You asked about that. I think the one thing that we would need you to address is enhancements in attorney's fees. That's an issue where it was not separated out. It was given globally across both patents. And here, we think you can decide the issue. There certainly isn't a basis, given the ruling here from the preliminary injunction reversal, finding that Chamberlain had not shown a likelihood of success. There can't possibly be a basis under the read factors to support triple damages enhancement, as well as attorney's fees. And so we'd ask you to readdress that issue in reverse on that. And I'm up. I'm out of time. And unless you've got questions, I'll stop. Thank you, counsel.  Great. Thank you, Your Honor.